JAMES F. SMITH, CSB #41980
IMMIGRATION LAW CLINIC
University of California, Davis School of Law
1 Shields Avenue, Bldg. TB-30
Davis, CA 95616-8821
Telephone: (530) 752-6942
Facsimile: (530)752-0822
jfsmith@earthlink.net

CARTER C. WHITE, CSB #164149
KING HALL CIVIL RIGHTS CLINIC
U.C. Davis School of Law
One Shields Avenue, Bldg TB-30
Davis, CA 95616-8821
Telephone: 530.752.5440
Facsimile: 530.752.5788
ccwhite@ucdavis.edu

Attorneys for Petitioner
Juan Carlos Valadez Lopez

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| JUAN CARLOS VALADEZ-LOPEZ,<br><br>Petitioner,<br><br>vs.<br><br>MICHAEL CHERTOFF, et al,<br><br>Respondents. | No. C-05-4192 RMW<br><br>**PETITIONER'S MOTION FOR ATTORNEY'S FEES**<br>(28 U.S.C. § 2412; FRCP 54(d)(2); Local Rule 54-6)<br><br>Hearing: February 17, 2006<br>Time: 9:00 a.m.<br>Courtroom: 4th floor, #6<br>Judge: Ronald M. Whyte |

Please take notice that on February 17, 2006, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of The Honorable Ronald M. Whyte, Petitioner will move for an order of attorney's fees pursuant to the Equal Access to Justice Act. This motion is based upon this notice, the memorandum of points and authorities and attachments thereto, the entire court file, and any further evidence presented upon oral argument of this matter.

Petitioner asks this Court for an order of attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), of $56,898.

///

**Issue to be Decided**

Whether Petitioner is entitled to an award of attorney's fees under the EAJA, because Petitioner is a prevailing party, the government cannot demonstrate that its position was substantially justified or that special circumstances make an award unjust, and the requested fees are reasonable.

**Introduction**

Petitioner asks this Court for an order of attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), which authorizes a district court to award attorney's fees and costs to a litigant if: (1) he is the prevailing party; (2) the government fails to show that its position was substantially justified or that special circumstances make an award unjust; and (3) the requested fees and costs are reasonable. *Perez-Arellano v. Smith*, 279 F.3d 791, 793 (9th Cir. 2002) (citing 28 U.S.C. § 2412(d)(1)(A)).

Petitioner prevailed against the government when he obtained a stipulated order from this Court, restraining his federal custodians—the Immigration and Customs Enforcement ("ICE"), an agency of the United States Department of Homeland Security ("DHS")—from failing to properly medicate him and failing to permit his transportation to his state and immigration court proceedings. The filing of the petition and the stipulated order caused the ICE officials to end their policy of refusing to transport petitioner to the Yolo County Superior Court to attend calendared hearings on his motion to withdraw his plea of no contest to the sole conviction that rendered him subject to mandatory immigration detention. It also assured that the transportation would not cause an interruption in his antipsychotic medication that had prevented him from being mentally present at his state court hearing on July 25, 2005, as well as at his immigration court hearings on two occasions, namely August 2, 2005, and September 6, 2005.

Because the filing of this petition and the entry of the stipulated order permitted petitioner to be physically and mentally present at the state court and immigration court proceedings the merits of his challenge to his mandatory detention could be considered. Petitioner's counsel filed a motion for reconsideration of the Immigration Judge's denial of his motion for bond determination, an application for cancellation of removal and an application for withholding of

removal. The first motion was argued on November 29, 2005, and then granted by Immigration Judge Anthony S. Murray, whose order determined that Petitioner was not subject to mandatory detention due to the pending motion under Cal. Penal Code §1018 and set Mr. Valadez Lopez's bond at $1,500, which upon posting resulted in his release from detention on December 1, 2005.

The government had prevented Mr. Valadez Lopez from challenging or ending the legal basis for his mandatory detention by preventing him from attending a hearing to withdraw his plea to the conviction that gave rise to his detention without right to bail. The state court hearing on the motion was repeatedly delayed because the government transferred him to distant facilities, failed to provide medication for his mental illness, and refused to authorize his release to country jail in which his motion to withdraw was pending. Similarly, Mr. Valadez Lopez's immigration proceedings were also postponed due to the government's practices and procedures.

The government's actions prevented Mr. Valadez Lopez from being both mentally and physically present in state court to challenge the legal basis for his mandatory detention and immigration court to seek relief from deportation. The government's positions do not have a reasonable basis in law or fact as they violated Mr. Valadez Lopez's constitutional rights and violated their own standards for treating immigrant detainees outlined in the ICE *Detention Standards Operations Manual*. http://www.ice.gov/graphics/dro/opsmanual/

**Statement of Facts**[1]

Petitioner is a thirty-year-old native and citizen of Mexico. Exh. B, C. He entered the United States without inspection in April 1994. Exh. C. On the night of November 15, 2002, Mr. Valadez Lopez experienced a schizophrenic delusion during which he walked around Winters, California in a daze. The following morning, a "voice" told him that a home he walked past the night before belonged to him. He returned to the home and attempted to enter by jiggling the door, but left when the occupants confronted him. The occupants called the authorities who arrested him in a nearby orchard.

---

[1] Support for these factual contentions is found in the Exhibits filed in support of Petitioner's Brief in Support of Motion for Temporary Restraining Order (Docket #3), and citations to exhibits in this section are to those alphabetically-labeled exhibits (Exhs. A-CC). To avoid confusion, original exhibits to this motion for attorney's fees will be numbered.

At the arraignment on November 19, 2002, Mr. Valadez Lopez was charged with prowling, first degree burglary, and false representations to a police officer. On December 12, 2002, the Yolo County Superior Court entered an order releasing him from custody on his own recognizance, but the release was rescinded when it was discovered that there was a Border Patrol hold placed on him because he had no immigration status. Although he had a right to immigration bail, no one pressed the issue on his behalf. For the next six months, Mr. Valadez Lopez waited in jail, where he remained without diagnosis or treatment for his mental illness.

In late June 2003, the Yolo County Superior Court found that Mr. Valadez Lopez was not mentally competent to stand trial. The court ordered him sent to Napa State Hospital. During his time in Napa, the professional staff diagnosed him as suffering from schizophrenia and prescribed a combination of medications to treat his mental illness. He stayed in Napa State Hospital for treatment until his mental competency was certified on August 19, 2004.

In August 2004, Mr. Valadez Lopez was found competent to stand trial. Deputy Public Defender Richard Van Zandt was assigned to Mr. Valadez Lopez's criminal case. A trial date was set for October 26, 2004.

During sentencing, Mr. Van Zandt noticed a discrepancy between the probation report and the RAP sheet. The probation report noted "no prior criminal history." However, he did not raise this issue at the hearing. Exh. L, p. 16.

The prior convictions listed on the RAP sheet were in fact not accurate. Mr. Valadez Lopez had no prior convictions, and the convictions listed were those of another defendant. Had Mr. Van Zandt been aware that Mr. Valadez did not have any prior convictions, he admits he would have not have advised him to plea to felony burglary.

On November 15, 2004, Mr. Valadez was convicted of attempted first degree burglary and sentenced to three years of probation and 365 days in jail. He received 891 days credit for time served. Four days later, on November 19, 2004, Mr. Valadez Lopez received a Notice to Appear (NTA) and was detained in Sacramento County Jail. The NTA alleged that he was removable as an alien present in the United States without being admitted or paroled. The NTA was later amended to include that he had committed a crime involving moral turpitude.

On December 30, 2004, Public Defender Donald Lown submitted a motion to withdraw Mr. Valadez Lopez's guilty plea pursuant to California Penal Code § 1018. A trial date was set for January 15, 2005. The Yolo County Superior Court appointed attorney David Reed to represent Mr. Valadez Lopez due to the conflict of interest within the Yolo County Public Defender's Office.

Under the custody of ICE, Mr. Valadez Lopez was prevented from challenging or ending the legal basis for his mandatory detention. His federal custodians prevented him from physically and mentally attending a state court hearing to withdraw his plea to the conviction that gave rise to his detention without right to bail. Moreover, ICE prevented Mr. Valadez Lopez from seeking relief from deportation in Immigration Court.

In response to ICE's failure to properly transport and medicate Mr. Valadez Lopez while he was in federal detention, counsel for Mr. Valadez Lopez filed a writ of habeas corpus to review the lawfulness of his detention by ICE. He also filed the writ to seek declaratory and injunctive relief, requesting that the Court find that 8 U.S.C. § 1226© Immigration and National Act § 236© the basis of his custody, was unconstitutional as applied to him since he was detained for over ten months without a final order of removal.

On November 17, 2005, this Court issued a stipulated order restraining the government from: (1) failing to properly medicate petitioner, and (2) failing to permit his transportation to the Yolo County Superior Court so that Mr. Valadez Lopez may appear to pursue his motion to withdraw his plea of no contest and to appear before an Immigration Judge for his application for withholding of removal. The stipulated order resulted in the Immigration Judge Anthony S. Murray's order setting Mr. Valadez Lopez's bond, which upon posting resulted in his release from detention on December 1, 2005.

**Argument and Authorities**

EAJA authorizes a district court to award attorney's fees and costs to a litigant if: (1) she is the prevailing party; (2) the government fails to show that its position was substantially justified or that special circumstances make an award unjust; and (3) the requested fees and costs are reasonable. *Perez-Arellano*, 279 F.3d at 793.

**A. Petitioner is the Prevailing Party**

In *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598 (2001), the Supreme Court set forth two requirements for a litigant to qualify as a prevailing party within the meaning of EAJA. First, the party must achieve material alteration of the legal relationship of the parties. Second, that alteration must be judicially sanctioned. *Id.* at 604-605. Following the *Buckhannon* Court's two-part test, the Ninth Circuit recently held in *Carbonell v. INS*, 429 F.3d 894 (9th Cir. 2005) that a petitioner was a "prevailing party" under EAJA when he obtained a court order incorporating a voluntary stipulation that materially altered the relationship between the party and the government. *Id.* at 895-96.

Petitioner is the prevailing party under this test. He satisfies the first prong of the prevailing party test, because the Court's order based on the parties' stipulation materially altered "the legal relationship between the parties because the [petitioner forced respondent] to do something he otherwise would not have to do." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000). He satisfies the second prong of the test because the Court's entry of the stipulation as its Order provides the requisite judicial sanction.

On October 17, 2005, Mr. Valadez Lopez filed this petition for writ of habeas corpus, which challenged the lawfulness of his detention. As a consequence, this Court issued the stipulated order regarding medication and transportation on November 23, 2005, which was necessary to have Mr. Valadez Lopez both physically and mentally present in the state and immigration court proceedings. It was the interplay between both of these court appearances that resulted in the Immigration Judge Murray's order setting Mr. Valadez Lopez's bond, which upon posting resulted in his release from detention on December 1, 2005. This action was subsequently dismissed as moot on December 6, 2005 (Docket #14).

**B. The Government's Position Was Not Substantially Justified**

To be substantially justified, so as to preclude award of attorney's fees under EAJA, the government's position must have a reasonable basis in law and fact. Congress specifically allocated the burden of proof of substantial justification to the Government, as reflected in the legislative history. H.R. Rep. No. 1498, 96th Cong., 2d Sess. 10 reprinted in 1980 U.S. Code

Cong. & Ad. News 4984, 4989. *See also Gonzales v. Free Speech Coalition*, 408 F.3d 613, 618 (9th Cir. 2005) ("The government bears the burden of demonstrating substantial justification."); *AL-Harbi v. INS*, 284 F.3d 1080, 1085 (9th Cir. 2002) ("Substantial justification in this context means justification to a degree that could satisfy a reasonable person.").

The Ninth Circuit articulated in *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988) that "the inquiry into the existence of substantial justification therefore must focus on two questions: first, whether the government was substantially justified in taking its original action; and, second, whether the government was substantially justified in defending the validity of the action in court." Unless the government can establish that all of its positions were substantially justified, the claimant is entitled to receive attorney's fees.

The statute specifically defines the "position of the United States" as meaning: "in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based…." 28 U.S.C. § 2412(d)(2)(D). In some circuits, there may be case law finding a *per se* lack of substantial justification where the government's position violates the Constitution, a statute, or its own regulations. *See, e.g., Mendenhall v. National Transp. Safety Bd.,* 92 F.3d 871, 874 (9th Cir. 1996).

In this case, the government's position was not substantially justified as its actions violated Mr. Valadez Lopez's constitutional rights and violated its own guidelines for treating immigrant detainees. The Supreme Court in *Bridges v. Wixon*, 326 U.S. 135, 154 (1945) held that violations of immigration regulations by a government agency's rules constitute a violation of due process. Here, these violations directly contributed to the prolonged deprivation of essential medical care for Mr. Valadez Lopez, which deprived him of the opportunity to attend his state and immigration court hearings.

1. The Government Denied Mr. Valadez Lopez Medication For His Mental Illness Which Prevented Him From Being Mentally Present in State and Immigration Court

ICE failed to provide the medical care necessary for Mr. Valadez Lopez to be mentally capable of participating in state and immigration court proceedings in that they deprived him, a diagnosed schizophrenic, of the medication his mental condition requires. Moreover, neither the

Sacramento facility nor the Lerdo facility—the locations of Mr. Valadez Lopez's detention—followed proper guidelines for transfer and medical care as set out in the *ICE Detention Standards Detention Operations Manual*.

The ICE *Detention Standards Operations Manual* provides uniform policies and procedures concerning the treatment of individuals detained by ICE. Under these guidelines, "all detainees shall have access to medical services that promote detainee health and general well-being." It further states, "distribution of medication will be according to the specific instructions and procedures established by the health care provider." Moreover, the manual states that "the facility health care provider will be given advance notice prior to the release, transfer, or removal of a detainee, so that medical staff may determine and provide for any medical needs associated with the transfer or release of a detainee." This detention standard also applies to Contract Detention Facilities (e.g., county jails).

The following are the facts that substantiate Mr. Valadez Lopez's claim that the government failed to properly medicate him pursuant to ICE detention guidelines. On May 9, 2005, a medical officer at Sacramento County Jail examined Mr. Valadez Lopez and determined that when he had been transferred to Yolo County several days prior for court proceedings, his medication was not provided to him. He was without medication for a period of about ten days and was beginning to experience auditory hallucinations again. His medication was only restarted May 9, 2005 when he returned to Sacramento County Jail. Approximately two weeks later, though, on May 22, 2005, Mr. Valadez Lopez was transferred to Yolo County Jail for further court proceedings. Again, he was not given his medications for several days. On June 1, 2005, he was transferred back to Sacramento Country Jail. However, it was not until June 15, 2005—two weeks later—that the psychiatric staff provided medication to him again, when they were alerted by a family member that his condition was deteriorating. The psychiatric staff was not previously aware that the petitioner had been

transferred back to Sacramento County Jail. Ultimately, Mr. Valadez Lopez was without medication for approximately 25 days.

On June 15, 2005, Mr. Valadez Lopez's medication was restarted, but he received it for only four days because on June 20, 2005, he was transferred out of Sacramento County Jail to the Lerdo Pretrial Facility in Bakersfield in Kerns County. During the visit, Mr. Valadez Lopez was uncommunicative and appeared to be in a tormented and anxious state. Such behavior was completely different from behavior shown during prior visits, when he communicated freely and normally. A student representative called psychiatric services at the Lerdo Facility and discovered that Mr. Valadez Lopez had not received psychiatric evaluations or medication of any kind while at the Lerdo facility.

Two days later, on July 13, 2005, as a result of phone calls from his counsel to the Lerdo facility, Mr. Valadez Lopez was evaluated by Lerdo psychiatric services. The staff at Lerdo had received no information either from transporting officials or from the Sacramento County Jail regarding Mr. Valadez Lopez's diagnosis or medications. Mr. Valadez Lopez was examined by Rey Rios, Recovery Specialist for Kern County Mental Health, who determined that he had not been receiving medication and was "a mess." Mr. Rios obtained consent from Mr. Valadez Lopez to see a psychiatrist and to receive medication. Mr. Valadez Lopez was scheduled for an appointment with a psychiatrist on July 22, 2005, but was transferred to Yolo County Jail at 2:30 that morning to attend his hearing on his motion to withdraw his plea of no contest. Therefore, he was unable to attend his appointment or receive medication.

The psychiatric nurse and primary provider at Yolo County jail stated that she was not notified of Mr. Valadez Lopez's need for medication until his counsel contacted her. Before she was able to meet with Mr. Valadez Lopez, he had been transferred to Sacramento. No one at Yolo County Jail dispensed medication to Mr. Valadez Lopez.

On July 25, 2005, Mr. Valadez Lopez was present for his hearing in Yolo County Superior Court on his motion to withdraw his plea of no contest. Before the hearing, counsel attempted to meet with him, but soon realized that he was suffering psychosis due to the deprivation of his

medication, and was in a non-communicative state. The hearing could not continue, and Judge Sweet was forced to postpone the hearing until August 22, 2005.

On July 26, 2005, when Mr. Valadez Lopez was returned to Sacramento County Jail, he was prescribed Buspar, Zoloft, Risperdol and Cogenta. He received the first of this medication on the morning of July 28, 2005. Prior to that, he was deprived of his medication almost entirely for a total of three months. On July 29, 2005, he indicated to the psychiatric staff at Sacramento County Jail that he intended to kill himself, and was put on a suicide watch. He was transferred to his immigration hearing in San Francisco on August 2, 2005 and was returned later that evening. The suicide watch continued until August 10, 2005.

2. The Government Denied Mr. Valadez Lopez Transportation To Court Proceedings To Be Physically Present To Challenge The Underlying Legal Basis For Mandatory Detention

ICE often transfers detainees from one facility to another for a variety of reasons. The ICE *Detention Standards Detention Operations Manual* prescribes the procedures and notification requirements to be followed when transferring a detainee. According to the manual, ICE

> will make all necessary notifications when a detainee(s) is transferred. If the detainee(s) is being transported by Justice Prisoner Alien Transportation System (JPATS), ICE will adhere to JPATS protocols. In deciding whether to transfer a detainee, ICE will take into consideration whether the detainee is represented before the immigration court. In such cases, Field Office Directors will consider the detainees' stage within the removal process, whether the attorney of record is located within reasonable driving distance of the detention facility and where immigration court proceedings are taking place.

ICE prevented Mr. Valadez Lopez's physical appearance at the withdrawal of plea hearing in state court by refusing to allow him to be transported to the state court proceedings. Because of Mr. Valadez Lopez's status as an immigrant detainee, there were considerable problems with transportation to his state court hearing. Denying Mr. Valadez Lopez his opportunity to challenge the factual and legal basis for his mandatory detention was not reasonable, and therefore the government's position was not substantially justified.

The Sacramento County Jail has a contract with ICE to hold detainees, but Yolo County does not. Mr. Valadez Lopez was unable to attend the hearing to withdraw his plea on February 23, 2005 and again on February 28, 2005 because an ICE agent told Yolo county transportation officer, Mary Alvarez, that ICE needed a writ of habeas corpus before releasing Mr. Valadez Lopez to Yolo County.

Because of court congestion, the criminal case was continued to April 22, 2005. Mr. Valadez Lopez was transferred and appeared in court, but the case was continued four times, until June 13, 2005 because of court congestion.

On June 10, 2005, Mr. Valadez Lopez's public defender, David Reed, received a phone message from the Sacramento County Sheriff saying they needed a new agreement with ICE before they could transport Mr. Valadez Lopez. As a result, Mr. Valadez Lopez was not transferred and did not appear in court for his June 13, 2004 hearing. The case was continued to July 25, 2005.

Mary Alvarez attempted to get Mr. Valadez Lopez transferred to Yolo until his case was completed, but representatives of the Sacramento County Jail said they needed permission from ICE. Although such permission was requested, Officer Alvarez never received a response. When she last tried to transfer Mr. Valadez Lopez to Yolo County, she was told that he had been transferred to Lerdo Pretrial Facility in Kern County.

Yolo County Sheriff transportation officer Mary Alvarez was scheduled to pick up Mr. Valadez Lopez at Sacramento County Jail on August 17, 2005 and transport him to Yolo County for his hearing. However, on August 16, 2005 Immigration and Customs Officer Greenburg called Officer Alvarez and said that "we decided to put a stop to this practice of transferring Mr. Valadez Lopez back and forth" and that "we are not going to wait for this guy to get booked out and booked back in. He said that if "your agency or another agency wants to get a criminal warrant for him and you want to take full custody, more power to you, but until that happens, we are not going to let him be transferred anymore." As a result, Mr. Valadez Lopez was not transported and was

deprived of the opportunity to appear at the hearing. The hearing was rescheduled for September 19, 2005.

In preparation for the September 19, 2005 hearing, criminal defense attorney David Reed called ICE Officer Greenburg during the week of September 5, 2005 requesting Mr. Valadez Lopez's transfer. Officer Greenburg said that ICE was not willing to permit Mr. Valadez Lopez to be transported to Yolo County and to be housed there until the conclusion of his hearings. Mr. Reed then spoke with Officer Greenburg's supervisor, Craig Meyers, who confirmed that information. Mr. Valadez Lopez was indeed not transported to Yolo County for the hearing, and the case was continued to October 17, 2005.

3. Lack Of Medical Care And Resulting Delays in the Pending Criminal Case Undermined The Fairness of Mr. Valadez Lopez's Bond and Removal Proceedings In Immigration Court.

In his initial removal proceedings on April 11, 2005, Mr. Valadez Lopez applied for cancellation of removal under 8 U.S.C. §1229(b). In preparation for the hearing, it was discovered that Mr. Valadez Lopez would suffer torture and persecution if removed to Mexico, due to deplorable conditions in its mental institutions, where Mr. Valadez Lopez is likely to be institutionalized if removed. During the hearing, counsel for Mr. Valadez Lopez made an oral motion for continuance to submit an application for withholding of removal. The IJ denied cancellation and continuance, but stated his willingness to consider an application for withholding of removal set forth in a Motion to Reopen. The IJ also denied a motion for bond redetermination.

On May 7, 2005, Mr. Valadez Lopez, through his counsel, filed a motion to reopen based on eligibility for withholding of removal. The IJ granted the motion and set the matter for hearing on August 2, 2005.

Mr. Valadez Lopez filed a motion for reconsideration of bond determination with the IJ on July 29, 2005. That same day, he filed a nearly identical request for release with the San Francisco ICE Detention and Removal Office. ICE never responded to the request.

Mr. Valadez Lopez was transferred to San Francisco for his immigration hearing on August 2, 2005. Although Mr. Valadez Lopez was physically present at his hearing, he was not mentally competent due to the lack of proper medical care. Counsel was unable to effectively communicate

with him and the IJ recognized his incapacity to testify. The IJ also instructed counsel on both sides to cooperate to make sure that Mr. Valadez Lopez continually receives his medications so that he will be able to appear for hearings. The IJ then continued the removal hearing to September 6, 2005. The IJ also denied the petitioner's motion for reconsideration of bond determination. Mr. Valadez Lopez appealed this decision to the Board of Immigration Appeals (BIA).

On August 4, 2005, counsel for Mr. Valadez Lopez sent a letter to Jennifer Castro, Assistant Chief Counsel for ICE, and Nancy Alcantar, Field Office Director for Detention and Removal Operations. The letter requested that they obtain specific information regarding the medications Mr. Valadez Lopez receives. No response was received from either party.

Visits by counsel in mid- and late-August revealed that Mr. Valadez Lopez's psychological condition was improving only slightly. Counsel was still unable to communicate with him, and thus moved to continue the September 6, 2005 hearing. The IJ continued the removal hearing to November 1, 2005. Counsel did not receive any information or cooperation from Jail Psychiatric Services or DHS representatives regarding Mr. Valadez Lopez's medical care or transportation.

Due to prolonged deprivation of proper medical care, Mr. Valadez Lopez was not competent to participate in the Section 1018 hearing in Yolo County scheduled for August 22, 2005. That hearing was continued to September 19, 2005, and again ICE refused to transport him. Nonetheless, Mr. Valadez Lopez was not competent to appear as he had not recovered from the withholding of his medication. The hearing was continued again to October 17, 2005.

On November 28, 2005, Immigration Judge Anthony S. Murray reconsidered and granted Mr. Valadez Lopez's motion for bond redetermination. Mr. Valadez Lopez was ordered release upon the posting of the statutory minimum bond of $1,500. He was subsequently released on December 1, 2005 upon posting bond.

### C. The Requested Fees And Costs Are Reasonable

EAJA fees are based upon "prevailing market rates for the kind and quality of the services furnished, except . . . attorney fees shall not be awarded in excess of $125 per hour unless the court

determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A).

1. Enhanced EAJA Fees For Cost of Living Is Reasonable.

Most courts calculate the "adjustment" or "enhancement" for inflation by using the national Consumer Price Index for All Urban Consumers ("CPI-U"). See, e.g., *Jawad v. Barnhart*, 370 F.Supp. 1077 (S.D. Cal. 2005). The CPI-U is published by the Bureau of Labor Statistics and is updated monthly. The courts measure the cost of living as of March 1996, when the statutory hourly rate of attorney compensation was raised from $75 per hour to $125 per hour. *Id*. at 1080 (citing *Sorenson v. Mink*, 239 F.3d 1140,1148-49 (9th Cir. 2001)). The adjusted rate is calculated by multiplying the $125 per hour statutory cap by the Present CPI-U, and then dividing that product by the March 1996 CPI-U of 155.7. *Jawad*, 370 F.Supp. 1080, n. 2. In the present case, the latest available CPI-U is for the month of November 2005, which is 197.6. http://www.bls.gov/cpi/cpid0511.pdf. Multiplying 125 by 197.6,and then dividing the product by 155.7 results in a rate adjusted for inflation of $159 per hour ($158.64).

Petitioner is asking for compensation for the 24.2 hours worked by attorney Christopher Todd on this matter to be compensated at the $ 159 per hour rate.

2. Enhanced EAJA Fees Are Also Justified Based on the Limited Availability of Attorneys With Distinct Knowledge and Specialized Skill Required To Litigate This Complex Case

The requested fee is also justified based on the limited availability of qualified attorneys with "distinctive knowledge" and "specialized skill" required to litigate this complex case. *Rueda-Menicucci*, 132 F.3d at 493, 496 (9th Cir. 1997). The Supreme Court addressed the meaning of the phrase "the limited availability of qualified attorneys for the proceedings involved" in *Pierce v. Underwood* , 487 U.S. 552 (1988). The Court stated "it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of general lawyerly knowledge and ability useful in litigation. An example of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language." *Id.* at 557.

The Ninth Circuit declined to adopt a proposed *per se* rule that "the practice of immigration law should be classified as a specialty similar to practicing patent law. *Thangaraja v. Gonzales*, 428 F.3d 870, 876 (9th Cir. 2005). The Ninth Circuit has held that the statutory cap may be exceeded if three requirements are satisfied: 1) the attorney has a "distinctive knowledge of specialized skill; 2) such knowledge and skills were necessary for the litigation; and 3) similar knowledge and skills could not have been obtained at the statutory rate," *Lucas v. White*, 63 F.Supp.2d 1046, 1061 (N.D. Cal. 1999) (quoting *Pirus v. Bowen*, 869 F.2d 536, 541-42 (9th Cir. 1989).

The complexity of Mr. Valadez Lopez's litigation warrants a rate enhancement under EAJA because he required a qualified attorney with "distinctive knowledge" and "specialized skills." The case involves a complex overlap of immigration law and the consequences of California criminal conviction, and area in which James F. Smith is an expert. Professor Smith's 114.5 hours should be compensated at $350 per hour.

3. Fees For Law Students Are Reasonable

Law clerks and paralegals may be compensated under EAJA at the prevailing market rate. The prevailing market rate need not reflect the rate charged to the client. In this case, law students at the University of California, Davis, School of Law, Immigration Law Clinic working on Mr. Valadez Lopez's case have worked 173 compensable hours and the Clinic is seeking compensation for those hours at $75 per hour.

Conclusion and Request for Relief

The Clinic is entitled to attorney's fees. The total amount requested is $56,898, which represents James F. Smith (114.5 hours @ $350 per hour), Christopher Todd (24.2 hours @ $159 per hour), and two law students (Jonathan Elson and Sarah Farnsworth) (173 hours @ $75 per hour).

Dated: January 5, 2006 __/S/ Carter C. White____________________

Carter C. White